People ex rel. Porteus v. Barton, Sheriff (two cases).

1. Minors' Rights to Be Protected by Courts.— Courts should, so far as possible, in cases before them, protect the rights of minors, although such rights may be but imperfectly claimed.
2. County Courts — Jurisdiction in Probate Matters.— The jurisdiction of the county courts of this state in matters of probate, settlements of estates, appointment of guardians and settlement of their accounts, is not made exclusive by the constitution.
3. Writ of Ne Exeat — May Issue in Behalf of a Minor.— Under section 1604, General Statutes, authorizing the district courts of the state to remove guardians upon the complaint of any person in behalf of the minor, and to make all orders necessary in the premises to compel the guardian to account, etc., the writ of *ne exeat* may be issued, if necessary, to protect the rights of such minor.
4. A Proper Case for Issuance of the Writ.— It appearing that the sole surety upon the bond of the guardian had become insolvent; that the guardian had squandered, misappropriated and embezzled the trust estate; that he had failed to comply with the statute requiring him to file a report; and that he is about to depart from the state for the purpose of cheating and defrauding his ward, a proper case for the issuance of the writ of *ne exeat* is presented.

## *Habeas Corpus.*

·Hearing upon officer's return to writs.

The petitioners, Hercules S. Porteus and Denyse Rose Porteus, were required by order of the district court of Arapahoe county to furnish bail upon a writ of *ne exeat*

*republica*, and, upon failing so to do, were placed in custody of the sheriff of Arapahoe county. For the purpose of testing the legality of the imprisonment, they now apply to this court to be discharged upon *habeas corpus*. There are two separate applications. The causes, however, were consolidated for the purposes of argument and determination. The admitted facts, so far as the same are necessary to a proper understanding of the present controversy, may be briefly stated as follows:

On the 12th day of the present month of February, Clara E. Bostwick, a minor of the age of eleven years, by her next friend, filed a complaint in the district court of Arapahoe county against Hercules S. Porteus and Denyse Rose Porteus, defendants. In this pleading it is alleged, *inter alia*, that the mother of said minor departed this life in Denver, Colorado, on the 24th day of July, A. D. 1885, intestate, leaving as her sole heirs at law the plaintiff and the defendant Hercules S. Porteus, her step-father; that in the month of October, 1886, said defendant was by the county court of Arapahoe county, Colorado, duly appointed guardian both of the estate and person of the plaintiff, and that letters of guardianship were accordingly to him issued, and the bond of such guardian fixed at the sum of $60,000.

It is also alleged that the court accepted as the sole surety upon such bond one William Porteus, who was then well worth the amount of the penalty named therein, but that he has since become, and is now, insolvent.

It is further alleged that by the order of said district court certain lands of which the intestate died seized had been sold by the said guardian some time in the year 1886; and the proceeds thereof, to the amount of about $13,000, belonging to the plaintiff, the defendant Hercules S. Porteus had appropriated to his own use. And plaintiff further charges the fact to be that said Hercules S. Porteus has squandered, embezzled and misappropriated the said sum of $13,000, the property of plaintiff, derived from the sale of the real estate as hereinbefore set forth, and that

he has never at any time made any report to any court
whatever of the state of Colorado of his act and doings as
such guardian, although required by the laws of this state
to make such a report at least once in each year.

Plaintiff further shows that the defendant Denyse Rose
Porteus, the present wife of Hercules S. Porteus, has re-
ceived from him, and has now in her possession and under
her control, personal property of the plaintiff's from the
estate of the said Margaret L. Porteus, of the value of
$5,000.

The insolvency of the defendants is shown, and plaintiff
charges that the said defendants, being so indebted to the
said Clara E. Bostwick, are about to depart from the state
of Colorado, and from the jurisdiction of the court, and
take up their permanent residence in the kingdom of Great
Britain and Ireland, taking with them out of the jurisdic-
tion of this court the moneys and property of the plaintiff.
It is also alleged that the defendants, in departing from
the state of Colorado, do so for the purpose of cheating
and defrauding the plaintiff out of her inheritance.

The prayer of the complaint is for the issuance of a writ
of *ne exeat republica*, directed to the defendants, detaining
them, and each of them, within the jurisdiction of the
court until such time as they shall give bond, with sureties
to be approved by the court, and for general relief.

Upon this complaint a summons and writ of *ne exeat*
were issued in the usual form, the bail upon the writ being
fixed at $13,000. The defendants, failing and refusing to
give bail, were detained by the sheriff of Arapahoe county,
from whose custody they seek to be discharged upon the
present application.

Mr. T. B. STUART and Mr. C. P. BUTLER, for petitioners.

Messrs. SULLIVAN & MAY and Mr. C. H. ROBINSON, for re-
spondent.

MR. JUSTICE HAYT delivered the opinion of the court.

Plaintiff's case, as made by the bill filed in the court below, presented a strong appeal for the exercise in her behalf of the chancery power of that tribunal to its utmost limit. The case of an orphan child of tender years seeking the aid of the court to preserve to her the estate descending from her deceased parent is certainly one in which a chancellor should be diligent in endeavoring to extend all relief proper in the premises. The settled policy of the law requires this to be done even in cases in which the guardian or *prochein ami* does not properly claim such rights. *Hutchinson v. McLaughlin*, 15 Colo. 492.

Petitioners, upon this application to be discharged upon *habeas corpus*, contend, however, that the district court was without jurisdiction to issue the writ of *ne exeat republica* for the following reasons: *First*, as the acts of which complaint is made relate to the settlement of an estate, it is claimed that the county court had exclusive jurisdiction to hear and determine the same; *second*, because of the constitutional inhibition against imprisonment for debt; *third*, because the writ of *ne exeat*, it is said, cannot be issued in any case before final judgment.

It must, of course, be admitted that the matters of which complaint was made in the district court arose out of the settlement of the estate of the deceased parent; but counsel are in error in assuming that the county court has exclusive jurisdiction of all such matters. Section 23, article 6, of the state constitution does not so provide. It reads as follows: " County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates, appointment of guardians, * * * and settlement of their accounts. * * * " It is not provided, however, that such jurisdiction shall be exclusive. Had this been intended, we have no doubt language would have been employed that would have placed the matter be-

yond controversy. *Crain v. Barnes*, 1 Md. Ch. 151; *Darling v. McDonald*, 101 Ill. 370.

So far as legislative construction bears upon the question, it may be said that the legislature has never treated this provision as conferring exclusive jurisdiction upon the county courts; for, while it has enacted a very complete system of procedure to be followed in the administration of estates, appointment of guardians, and settlement of their accounts, etc., and has generally provided that such matters shall be adjudicated in the county court, many exceptions to such general rule are made by statutes expressly conferring jurisdiction upon the district courts. See Gen. St., §§ 484, 1594, 1604.

In the case at bar the guardian came into possession of the trust fund as the result of the sale of the lands of the ward made by order of the district court; and it would be strange, indeed, if the power of the district court in the premises was exhausted in making the order of sale. By section 20 of the chapter of the statutes entitled "Guardian and Ward," it is expressly provided that guardians appointed under the provisions thereof shall be subject to removal by the district court of the proper county upon the complaint of any person on behalf of the minor. See Gen. St., § 1604. The guardian in this case was most certainly appointed under the provisions of said chapter. By the sections referred to, the district court is given ample power not only to remove him, but to appoint another in his stead, and to make all such orders in the premises as may be necessary. This section disposes of the claim of exclusive jurisdiction in the county court, and, as it does not appear to be obnoxious to any constitutional objection, it must control here.

This brings us to the objection based upon the constitutional provision in reference to imprisonment for debt. The section reads as follows: "That no person shall be imprisoned for debt, unless upon the refusal to deliver up his estate for the benefit of his creditors in such manner as shall be prescribed by law, or in cases of tort, or where

there is a strong presumption of fraud." Art. 2, sec. 12, Const.

The facts stated in plaintiff's complaint, upon which the *ne exeat* proceedings are based, certainly show a strong presumption of fraud on the part of both respondents; thus bringing the case within the exceptions expressly made by the constitution. Aside from this, by the weight of authority, although a contrary doctrine has been announced in Illinois, and perhaps some other states, an arrest and detention upon a writ of *ne exeat* to prevent a person from going out of the state until he shall give security for his appearance is held not to constitute imprisonment for debt, within the meaning of the constitutional inhibition. *Dean v. Smith*, 23 Wis. 483; *Brown v. Huff*, 5 Paige, 235; *McNamara v. Dwyer*, 7 Paige, 239; *Bushnell v. Bushnell*, 15 Barb. 399; *Malcom v. Andrews*, 68 Ill. 100.

The objection founded upon the fact that the writ in this case was issued before final judgment is not well taken. The writ of *ne exeat regno*, from which authority for our present writ is derived, was at first only applied to great political objects and purposes of state, and no doubt had its origin in the fact that every male subject was bound to defend the king and his realm, and therefore the king might at his pleasure command him to stay within the realm; and although, at a later date, it was resorted to in cases where purely private rights were involved, it has been said by English chancellors that it should be applied to such cases with great caution and jealousy. In this country, however, it seems to have been regarded from the first as a writ of right in those cases in which it is properly grantable; and wherever used, it has always been regarded as a mesne, rather than a final, process. 2 Story, Eq. Jur. pp. 716, 717; *Adams v. Whitcomb*, 46 Vt. 708; *Myer v. Myer*, 25 N. J. Eq. 28.

While, in general, the writ lies only upon equitable demands and claims, there are some exceptions to the general rule, as in actions for an accounting or for alimony; and

with us these matters are also regarded as of equitable cognizance. *Porter v. Spencer*, 2 Johns. Ch. 169, is authority for the use of the writ when an action at law was pending for a balance of an account in which the defendant has been held to bail, the plaintiff in his bill in chancery alleging these facts, and also that in the action at law the defendant had pleaded the general issue for delay merely, and that he and his bail were both preparing to leave the state, neither leaving any property behind; and Chancellor Kent, upon allowing the writ of *ne exeat*, said, among other things: "In the present case, I have some doubts whether the bill states a matter of account on which the jurisdiction of the court can attach. To sustain a bill for an account, there must be *mutual demands*, and not merely payments by way of set-off. A single matter cannot be the subject of an account. There must be a series of transactions on one side, and of payments on the other. I place my interference on the necessity of the case. From the facts charged and sworn to, it appears to me that the remedy in the suit pending at law would be absolutely defeated without the interposition of this court. The books assume and admit principles that will justify the allowance of the writ under the peculiar circumstances of the present case. The remedy sought is indispensable to prevent a failure of justice; and this creates a marked difference between this and the ordinary cases. I should think it would reflect discredit on the administration of justice if the plaintiff could find no relief from the impending mischief arising from a failure of the remedy at law by the immediate removal of the defendant and his bail."

The case of *McNamara v. Dwyer, supra*, is authority for requiring a foreign administrator to give equitable bail upon a writ of *ne exeat* issued in a suit pending against him in chancery, brought to compel him to account for the trust funds which he had received abroad and brought with him into the state of New York.

In *Samuel v. Wiley*, 50 N. H. 353, it was held that, inde-

pendent of statute and as an incident to the power of enforcing the orders and decrees of the supreme court, any justice thereof was empowered to issue an order, in the nature of a writ of *ne exeat*, upon evidence satisfactory to him of a party's intention to leave the state. In the case at bar, unless the authority of the district court in issuing the writ can be sustained, the infant plaintiff will be practically remediless. If the facts stated in her complaint are true,— and for the purposes of these applications they must be so taken,— of what benefit to her would the ordinary citation requiring the respondents to appear and show cause, etc., at a future day, be? Before the return-day the defendants might be without the jurisdiction of the court and well on their way to Great Britain. As said by Chancellor Kent in *Porter v. Spencer*, *supra:* "It would reflect discredit on the administration of justice if the plaintiff could find no relief from the impending mischief."

In the opinion of this court the district court, with its enlarged jurisdiction, had ample power in carrying out the provisions of section 1604 to issue the writ of *ne exeat* upon which respondents are held.

In answer to the argument of counsel based upon alleged defects in the prayer of the complaint filed in that court, we are of the opinion that all proper relief may be afforded under the prayer for general relief contained in the petition. In addition to this, it should be remembered that the complaint may be amended in this as in other causes; and under our practice the writ of *habeas corpus* cannot be substituted for a writ of error. *Bassett v. Bratton*, 86 Ill. 152; *Ex parte Brandon*, 49 Ark. 143; *Ex parte Parks*, 93 U. S. 18.

The demurrers to the separate returns of the sheriff will be overruled, the writ of *habeas corpus* discharged, and the prisoners remanded.

*Writs discharged.*