ISAAC MILLER, APPELLANT, VS. JENNIE MILLER, APPELLEE.

ALIMONY WITHOUT DIVORCE—JURISDICTION—RESIDENCE OF PARTIES.

1. Where alimony is sought, without divorce, solely under the provisions of Section 1485 R. S., upon the ground of the existence in favor of the wife of some one or more of the legal causes for divorce, then the applicant must allege and prove that she has legally been a *bona fide* resident and citizen of this State for two years continuously next prior to the filing of her application. The prerequisite two years' residence here is jurisdictional, and no "cause for divorce," such as our courts could recognize, can properly be said *to exist in this State* in favor of any applicant until she has *bona fide* resided here the requisite period of two years.

2. Where the application for alimony without seeking divorce is predicated, under the provisions of Section 1486 R. S., upon the ability of the husband to maintain the wife and his failure so to do, then it is not necessary for the wife to allege or prove that she has resided here for two years; but in such case, in so far as the question of the jurisdiction of the court to entertain the cause is concerned, it is only necessary for her to show that either she or her husband has, in a proper and legitimate manner, become, at the time of the application, a *bona fide* resident and citizen of this State. It is immaterial in the latter cases how long such residence and citizenship shall have

continued here prior to the application. But it is not within the spirit or intent of either of these provisions of the statute to confer upon our courts the power to interfere in any respect with the marital status of citizens of other states who may be here only on a temporary visit, either to pass upon such status or to enforce any of the rights and duties that depend thereon.

3. Where an issue is raised by the pleadings, in a proceeding for alimony without divorce, as to the jurisdiction of the court, on the ground that neither the applicant wife nor the defendant husband is a resident or citizen of this State, such jurisdictional question is no bar to the granting of *temporary* alimomy and suit money *pendente lite*, but in such case it is within the sound judicial discretion of the court to award temporary alimony, *pendente lite*, until such jurisdictional issue, with others material to the proper determination of the controversy between the parties, can be finally heard and disposed of upon the proofs.

Appeal from the Circuit Court for Volusia county.

The facts of the case are stated in the opinion of the court.

*John W. Price* for Appellant.

*Scott & Broome* for Appellee.

TAYLOR, J.:

The appellee, Jennie Miller, filed her bill in the Circuit Court of Volusia county on the 18th day of December, 1893, against her husband, Isaac Miller, the appellant, praying therein, not for divorce, but for alimony, and the custody of their infant son of the age of twelve years, and for an allowance for the maintenance of said child; and for a writ *ne exeat* to prevent the defendant from departing the State and to furnish security for his compliance with the order for alimony.

The bill alleges, in substance, that the complainant, Jennie Miller, is a resident and citizen of the State of Florida. That she and the defendant, Isaac Miller, are husband and wife. That they were married in the state of New York in 1879, and that afterwards they removed to the town of Franklyn, in the state of New Jersey, at which place they resided until July, 1892, when the defendant kissed her and bade her good-bye, promising to return in three weeks' time, telling her that the object of his trip was to establish a syndicate of some kind somewhere in Texas. That the defendant continued to write to her until some time in November, 1892, when he ceased his letters, and she has never heard directly from him since. That defendant left her without a cause and has from the said July, 1892, wilfully, obstinately and continuously deserted her, leaving her in the meantime entirely unprovided for and without means of support other than what she was able to earn by her own labor and industry. That she has borne one child for the defendant, a boy now about the age of twelve years, named Isaac Harry Miller, who is now with her, and who has been supported and maintained by her since the desertion of her by the defendant. That she has been informed and believes, and upon such information and belief charges, that the defendant has avowed his purpose and intention to procure possession of this child, even at the cost of blood if necessary. That since his desertion of her the defendant has resided in the state of Texas. That she has inherited, by the death of a sister, Elizabeth C. Bodine, late of Volusia county, Florida, who died intestate in said county in 1893, the one-fifth interest in certain real and personal property belonging to her said deceased sister's estate. That by the consent and at the request of three of the heirs,

of the said estate she has applied for and obtained a grant of letters of administration upon said estate, and that Charles Delamater, a son of a deceased sister of the said Elizabeth C. Bodine, deceased, has been appointed as her co-administrator upon said estate. That the defendant, having ascertained that she has inherited, in the manner aforesaid, the one-fifth interest in the estate aforesaid, and desiring and intending to harass and wrong her, by attempting to exercise the right of a husband over the estate of his wife given to the husband by the laws of Florida, has left his home and business in Texas and has come to Florida recently, with the purpose and intention of taking possession of her property and of the said child Harry Miller, with the intent to carry beyond the limits of the State of Florida all of her personal property that he can lay his hands upon, and also to take from her and carry out of the State of Florida her said child. That she is advised she has good cause of divorce against her said husband upon the ground of his wilful, obstinate and continued desertion of her for one year, and that she has the legal right, under the laws of Florida, to obtain alimony without seeking a divorce. That the defendant has ample means and is fully able to maintain and contribute to her maintenance and that of his said child, and has without any fault of hers, and wholly without excuse of any kind, utterly failed to do so. That the said estate in which she has a one-fifth interest aforesaid is still unsettled, the debts have not yet all been paid, nor has the said estate as yet been divided, and she is, therefore, still dependent upon her own industry for the means of maintenance for herself and her said child. That the defendant will very soon, and may at any time, remove himself

beyond the limits of the State of Florida and beyond the reach of process of this court.

Personal service of the subpœna in chancery was made upon the defendant in Volusia county, Florida.

The defendant interposed a demurrer to the bill upon the grounds: That there was no equity in the bill; that it was not legally sworn to in order to obtain an injunction; that it was multifarious in seeking relief of several kinds; and that the court of chancery was without jurisdiction to adjudicate the subject-matter of said bill. This demurrer the court overruled, and such ruling is claimed to be error. The defendant then answered the bill, in substance, as follows: He admits his marriage to the complainant as alleged. He admits that he left Franklyn, New Jersey, about the 20th of July, 1892, but says that complainant knew where he was going, and the business upon which he was going; that the matter had been talked over between them before leaving for Texas, she having examined all his correspondence. He admits that he remained in Texas, but says that it was for the purpose of saving and securing a large sum of money, to-wit: about $105,000. That he kept up a correspondence with the complainant and sent her money as often as she needed it until November following, when she suddenly and without any cause known to him stopped answering his letters, and for reasons hereafter stated, to-wit: that previous to his going to Texas the said Jennie Miller received from him about $1,700, with the request from him to deposit the same in bank to her own credit, she thereafter took a portion of that money and went to California without his consent or any knowledge on his part where she was going, and remained away for a long time; that she came back and acknowledged her error and begged forgiveness. That previ-

ous to his going to Texas she had left her home where every comfort was provided for her and went away leaving him without any cause or excuse whatever, and came back and her crime was condoned by him. That when she stopped writing to him he naturally supposed that she had left her home and refused to correspond with him. That failing to hear from her, he did not write to her, but tried to ascertain from others where she and his child had gone, but failed to find out for a long time, and when he did ascertain where she was he found that she was in Albion, Michigan, where she now lives. That she took and carried with her to Michigan all the furniture belonging to him of about $7,000 in value which is still in her possession, and used by her, as he is informed and believes, in keeping a boarding house. He emphatically denies that he has ever failed or refused to provide for, support and maintain her in a comfortable manner, having plenty of means himself. That he has now and always had a good comfortable home for her as long as she remains with him and still has so long as she behaves herself as a wife should do towards her husband. That it is no fault of his that she did not come to him at his present temporary home in Texas, but of her own will she has remained away. He admits her inheritance of property in Florida from her sister and her administration on her sister's estate, but which administration was without his knowledge or consent, and which, he is advised, is illegal and void, and to which he will not give his consent. He emphatically denies that he came to Florida for the purpose of obtaining possession of the property that she inherits from her said sister's estate, but that he came here to collect a bill due him by said estate, and which he proposes to collect. He denies that he came to Florida to

take possession of his child, Isaac Harry Miller, but to see him and to provide for him as a parent would for a child; and says that he does propose to take said child whenever he is large enough to go to a proper school. He emphatically denies that he ever deserted her, or left her to her own resources, except when produced by her own acts, she always having a home whenever she thought proper to remain there, which she has failed and refused to do. That he is informed and believes that she went to California and remained there with objectionable persons as long as she saw proper, and returned to him, and that for the sake of her peace and happiness he condoned and forgave her bad conduct.

Upon the filing of the defendant's answer the court made an order for an injunction to restrain the defendant from interfering with the property inherited by the complainant, and for the issuance of a writ *ne exeat* against the defendant, the defendant to be released from custody thereunder upon his giving a bond with security to be approved by the sheriff in the sum of one thousand dollars. The order for and issuance of this writ is also assigned as error.

Under the writ *ne exeat* the defendant was arrested and gave the required bond.

The complainant then presented her petition for alimony *pendente lite*, and for attorneys' fees, and for suit money. Upon which the court made an order requiring the defendant to pay to the complainant until the further order of the court the sum of twenty-five dollars per week, the first payment to be made on the 3rd day of January, 1894, and weekly thereafter, and also the sum of one hundred dollars, solicitors' fees, and suit money, to be paid on January 3rd, 1894. From this order the defendant appeals.

It is contended for the appellant here that the court had no jurisdiction to entertain the cause because neither of the parties were residents or citizens of Florida, but were here only temporarily. Our statute (Sections 1485 and 1486 Rev. Stats.) provides that "if any of the causes of divorce set forth in Section 1480 (except in the ninth paragraph) shall exist in favor of the wife, and she be living apart from her husband, she may obtain alimony without seeking a divorce, upon bill filed and suit prosecuted as in other chancery causes; and the court shall have power to grant such temporary and permanent alimony and suit money as the circumstances of the parties may render just; but no alimony shall be granted to an adulterous wife." Section 1486 provides: "If any husband having ability to maintain or to contribute to the maintenance of his wife or minor children, shall fail to do so, the wife, living with him, or living apart from him through his fault, may obtain such maintenance or contribution upon bill filed and suit prosecuted as in other chancery causes, and the court shall make such orders as may be necessary to secure to her such maintenance or contribution." Section 1487 provides that "a decree of alimony granted under Sections 1484 and 1485 shall release the wife from the control of her husband, and she may use her alimony, and acquire, use and dispose of other property, uncontrolled by her husband, and when the husband is about to remove himself or his property out of the State, or fraudulently convey or conceal it, the court may award a *ne exeat* or injunction against him or his property, and make such order or decree as will secure the wife's alimony to her." While we do not think that it is within the spirit and intent of these statutes to confer upon our courts the power to interfere in any respect with the marital

status of citizens of other states who may be here only
on a temporary visit, either to pass upon such status
or to enforce any of the rights and duties that depend
thereon, yet where either of the parties, in a proper
and legitimate manner, becomes a *bona fide* resident
and citizen of this State, then our courts become
clothed with power to enforce and perfect all of the
rights of such citizen, and to compel, to the extent of
their jurisdictional powers, the performance of all
duties due to or from such citizen, including those that
grow out of the marital status; except, that when a
total dissolution or severance of such status, by di-
vorce, is sought, then our statute requires that the
residence here must have continued for two years be-
fore the application therefor can be made.    Where one
of the parties, however, is actually, legally and *bona
fide* domiciled in this State, as a citizen thereof, then,
we think, that under Section 1486 of this statute our
chancery courts have jurisdiction to enforce the duty
of maintenance and support due from the husband to
the wife by awarding alimony, particularly where per-
sonal service is made upon the husband within this
jurisdiction as has been done here.   Keerl vs. Keerl,
34 Md., 21.   It is contended for the appellant that the
provision of our divorce statute requiring two years
residence in the State before an application for divorce
can be entertained, applies to the granting of alimony
under all of the provisions of the statutes quoted.
Where the application for alimony is predicated solely
and entirely upon "the existence of a cause for di-
vorce," as provided for in Section 1485, first quoted
above, then we think the bill therefor should allege,
and it should also be proved, that the complainant wife
has in fact resided in this State continuously for two
years next prior to the exhibition of her bill, because

under our statute, requiring two years' residence on the part of the applicant for divorce before the doors of our courts are open to his or her complaint, no "cause for divorce" can properly be said to *exist in this State* in favor of such applicant, at least none such as our courts could recognize, until he or she shall have completed the requisite two years' residence here. The reason for the requirement of the two years' residence before a divorce can be applied for is to prevent citizens of other states from committing a fraud upon the law by taking up a temporary residence here solely for the purpose of obtaining divorces that they could not secure in the jurisdictions to which they belong. But where the application for alimony, as in the case before us, can be rested upon the provisions of Section 1486 above, that is a general provision of law to enforce the marital duty due from the husband, having the ability to do so, of maintaining and supporting his wife, regardless of the existence of any cause for divorce, then the reason for the requisite two years' residence does not apply, and in such case it becomes necessary, in so far as the jurisdiction of the court to entertain the cause is concerned, only to show that the applicant wife or the defendant husband is in fact properly and *bona fide* domiciled here as a citizen of this State. Because of the fact that the bill can be rested upon the provisions of the latter section of the statute, we think it was within the power and discretion of the court to grant alimony thereon. The bill alleges expressly that the complainant wife here is a resident and citizen of Volusia county, Florida. The answer denies this to be true, and asserts that she is a resident and citizen of Michigan, and that she is here only temporarily for the purpose of securing an interest inherited

by her in the estate of a deceased sister. Whether she is in truth a *bona fide* resident and citizen of Florida, or of the state of Michigan, then, is one of the material questions at issue between the parties to be ulti mately settled from the proofs to be furnished at the final hearing. The order appealed from grants temporary alimony only until all of the material issues between the parties can be finally determined by further orders and decrees of the court. And even though the answer raises the issue as to the jurisdiction of the court on the ground that both parties are residents and citizens of other states, still it is within the sound judicial discretion of the court below to award temporary alimony to the wife until that issue, with others material to the proper determination of the controversy between the parties, can be finally heard and determined. 2 Bishop on Marriage and Divorce, sec. 934; Bradstreet vs. Bradstreet, 6 Mackey, 502. Indeed it may be said to be well settled that where the fact of marriage, the wife's necessities and the husband's faculties are shown by adequate pleadings, temporary alimony will be allowed, in consonance with the facts of each case, within the sound discretion of the court. Methvin vs. Methvin, 15 Ga., 97; 2 Bish. Mar. & Div., sec. 929 *et seq.*, and authorities cited.. We do not see that the discretion of the court below has been abused either in ordering the payment of temporary alimony and suit money here, or in the amount required to be paid, in view of the admission from the defendant husband of the possession of abundant means.

It is also urged here as error that the granting of the writ *ne exeat* was improper. As there is no appeal from this order we can not consider the same.

The order appealed from is affirmed.