Ex Parte John Parker Bronk, Plaintiff in Error, vs. The State of Florida, Defendant in Error.

Habeas corpus—Not an appellate proceeding—What judgments inquired into under—Ne exeat—Alimony not a debt for which imprisonment forbidden.

I.  Neither error not the regularity of judicial proceedings can be received on *habeas corpus*, whether it be some informality. of procedure before trial, error in the sentence itself, or some irregularity subsequent to sentence.   If the record shows that the judgment, order or process under which the party is held is not merely erroneous, but such as could not, under any circumstances, or under any state of facts, have been pronounced or awarded by the court ordering or issuing it, then the party is entitled to discharge.   But if the judgment is merely erroneous, the court having given a wrong judg-

ment when it had jurisdiction, the party aggrieved can only have relief by writ of error or other process of review. He can not be relieved summarily by *habeas corpus*. The failure of the judge to exact a bond from the complainant to the defendant before issuing a writ of *ne exeat* as provided for by section 1474 Revised Statutes can be reviewed only in a direct proceeding on appeal, and can not be inquired into collaterally by *habeas corpus*.

2. The judgment of a court, made within its jurisdiction, that involved the adjudication of jurisdictional facts can not be attacked collaterally on habeas corpus.

3. Under our system of jurisprudence, where our courts of equity are clothed with plenary jurisdiction over the entire subject of granting divorces, and maintenance and alimony to wives either with or without divorce, and also with power to issue the writ of *ne exeat* for the enforcement of their decrees in such cases, such writ of *ne exeat* may be issued by our equity courts in suits for maintenance, before a decree is rendered fixing an amount to be paid, in all cases where it seems just to the chancellor to issue it and a necessity therefor exists.

4. Alimony or maintenance from the husband to the wife is not *a debt* within the meaning of the constitutional inhibition against imprisonment for debt.

5. On a writ of error taken by a husband to review the judgment of the Circuit Court in a *habeas corpus* proceedings instituted by him for the purpose of securing his discharge from imprisonment under a writ of *ne exeat* issued in a suit against him by his wife for maintenance, the wife has no such standing before the appellate court as will entitle her to ask at its hands counsel fees or alimony *pedante lite* such writ of error in the *habeas corpus* proceeding.

Writ of Error to the Circuit Court for Volusia. County.

The facts in the case are stated in the opinion of the Court.

*Isaac A. Stewart* (with whom was *Egford Bly* on the brief) for Plaintiff in Error.

*F. W. Marsh, Pas. D. Beggs* and *Geo. B. Perkins,* for Defendant in Error.

TAYLOR, C. J.

John Parker Bronk, the plaintiff in error, filed his petition on the third day of May, 1901, in this Supreme Court for a writ of *habeas corpus,* addressed to the Chief-Justice, who ordered the issuance of the writ making the same returnable, as is almost invariably the custom of this court in such cases, before the judge in whose jurisdiction the detention was had. Section 1771 Revised Statutes. The petition for the writ was substantially as follows: "Your petitioner, John Parker Bronk, respectfully represents that he is imprisoned and detained in custody without lawful authority, and illegally restrained of his liberty by J. R. Turner, the sheriff of Volusia county, Florida, at DeLand, in said county, by virtue of an order of Hon. Minor S. Jones, Judge of the Circuit Court of the Seventh Judicial Circuit of the State of Florida, in and for said county of Volusia, issued under the following circumstances: On the nineteenth day of April, 1901, one Lillie L. P. Bronk, claiming to be the wife of your petitioner, filed her bill of complaint in the Circuit Court of said county of Volusia, in chancery, against petitioner and his son Frederick Bronk, praying for alimony against your petitioner, and the cancellation of certain alleged conveyances from petitioner to said Frederick Bronk; that thereupon on the twentieth day of April, A. D. 1901, without any bond being required of complainant, and without any alimony having been decreed against petitioner, your petitioner was taken in custody by said J. R. Turner under a writ of *ne exeat* issued in said cause requiring petitioner to procure bail in the sum of ten thousand dollars that

he would not go beyond this State without leave of court, and that he would abide by and comply with all lawful orders and decrees of said court, and that in case your petitioner should refuse to give such bail, your petitioner should be brought forth in custody of said Sheriff before said judge at Titusville for further proceedings in the premises, until he shall do it of his own accord. Copy of said writ is hereto attached and made part of this petition; that your petitioner was unable to give bail as required by said writ, and was thereupon held in custody and deprived of his liberty by said J. R. Turner, sheriff as aforesaid; that on the twenty-fifth day of April, A. D. 1901, petitioner moved before Hon. Minor S. Jones, judge as aforesaid. that said writ of *ne exeat* be quashed and vacated ;that said judge denied said motion and ordered your petitioner to be held in custody and detained of his liberty and imprisoned in the common jail of Volusia county, unless and until your petitioner should give bond in the sum of $10,000.00 that he will not depart without the State of Florida without the leave of the court, and abide by and conform to all lawful orders and decrees made in said cause, and pay the alimony and other sums decreed by said court to be due, or upon appeal by the appellate court. A copy of said order is hereto attached and made part of this petition. And your petitioner says that said detention, confinement and restraint is unlawful for the following reasons : (1) Because said writ of *ne exeat* was issued without bond from complainant to petitioner, as required by law; that the court was without jurisdiction to issue said order without bond, and the same was and is illegal and void. (2) Because in alimony proceedings the court has no jurisdiction to issue writ of *ne exeat* until alimony has

been decreed, and no alimony having been decreed against
petitioner the said order was and is illegal and void. (3)
Because said order is in excess of the jurisdiction of the
court and is illegal and void. (4) Because at the time of the
filing of the bill of complaint neither the complainant nor
either of the defendants were, and are not now, residents
of the State of Florida, and none of the property men-
tioned in said bill has ever been within the limits of this
State, and the court has no jurisdiction to decree alimony
in said cause, or to issue the writ of *ne exeat,* and the said
writ and order were and are illegal and void. Wherefore
your petitioner prays that a writ of *habeas corpus* may be
granted and issued directed to said J. R. Turner, sheriff
as aforesaid, commanding him to bring and produce be-
fore this honorable court, at the place and time in said
writ specified, the body of said John Parker Bronk, to-
gether with the cause of his detention, and that said
John Parker Bronk, your petitioner, may be restored his
personal liberty."

Attached as exhibits to said petition for the writ of
*habeas corpus* were copies of the two following docu-
ments:

"In the Circuit Court of Volusia County, State of Florida.

In the name of the State of Florida: To all and
singular the sheriffs of the State of Florida: Whereas, it
is represented to said Honorable Court sitting in chancery,
on the part of Lillie L. P. Bronk, complainant, against
John Parker Bronk, and other defendant, among other
things, that he the said John Parker Bronk, defendant, is
greatly indebted to the said complainant on account of ali-
mony and other causes, and designs quickly to go into
parts without this State, as by oath made on that
behalf appears, which tends to the great preju-
dice and damage of the said complainant, there-

34 Fla. 31.

fore, in order to prevent this injustice, we hereby command you, that you do, without delay, cause the said John Parker Bronk personally to come before you and give sufficient bail or security in the sum of ten thousand dollars, to be approved by the clerk, that the said John Parker Bronk will not go, nor attempt to go, into parts beyond this State, without leave of our said court, and that he will abide by, and comply with all lawful orders and decrees of our said court, and in case the said John Parker Bronk shall refuse to give such bail or security, then you are to bring him, the said John Parker Bronk in custody before me at Titusville in said district forthwith for further proceeding in the premises until he shall do it of his own accord; and when you have taken such security you are forthwith to make and return a certificate thereof, together with this writ to us in our said court of chancery distinctly and plainly under your hand.

Witness the Honorable Minor S. Jones, Judge of the Circuit Court in and for the county of Volusia in Seventh Judicial Circuit of the State of Florida (SEAL.) and the seal of the said court, this twentieth day of April, A. D. 1901.

SAM'L D. JORDAN,

Clerk of the Circuit Court, Volusia County, Florida." ·
"In the Circuit Court of Volusia County, State of Florida.
Lillie L. P. Bronk )
    vs. )
J. P. Bronk, et al.. )

The defendant John Parker Bronk being brought before me in chambers at Titusville this day under the writ of *ne exeat* issued in compliance with the order of this court made on the nineteenth day of April, A. D.

1901, for further proceedings in the said cause, and it appearing that the defendant is in custody, not having given bond as required by said order and writ; and appearing by his solicitors filed his motion to quash the said writ on the several grounds therein set forth. And the said cause having come on for hearing on the said motion to quash before me on this day, and the same having been argued by the respective counsel in the cause, and considered by the court, it is now ordered and decreed that the said motion be and the same is hereby denied, and the said defendant John Parker Bronk is hereby remanded to the custody of the said sheriff of Volusia county, Florida, in whose county the said writ was served, and he is hereby commanded to restrain him, the same John Parker Bronk from going without the State of Florida without leave of this court, unless he give bond with security in the usual form in the penal sum of $10,000, to be approved by the clerk of the said court, conditioned that he will not depart without the State of Florida without the leave of this court and abide by and conform to all lawful orders and decrees made in said cause, and pay the alimony and other sums decreed by said court to be due, or upon appeal by the appellate court, and in default thereof, then to commit him, the said John Parker Bronk, to the common jail of Volusia county to be dealt with according to law. Done and ordered at chambers at Titusville this twenty-fifth day of April, A. D. 1901.

MINOR S. JONES, Judge."

In response to the writ of *habeas corpus,* the sheriff made return alleging as the cause of the detention the said orders and writ of *ne exeat,* and attached as part of his return to said writ a copy of the entire record in the suit in which such order of *ne exeat* was issued. At the

hearing on the writ of *habeas corpus,* the Circuit Judge refused to discharge the petitioner, but remanded him to the custody of the sheriff, to be held in accordance with the writ of *ne exeat* theretofore granted and under the terms therein mentioned, and adjudged the petitioner to pay the costs of such *habeas corpus* proceeding.

From this judgment the petitioner sued out this writ of error to this court.

There are nine assignments of error. The first seven of these relate wholly to admissions and rejections of evidence on the hearing of the *habeas corpus.* As we deem all of this questioned evidence wholly irrelevant and immaterial to the issues properly before the court on the *habeas corpus* proceeding it becomes unnecessary for us to pass upon them, since they could not affect the conclusions at which we have arrived, no matter what might be our ruling thereon.

The eighth and ninth assignments of error question the correctness of the court's ruling refusing to discharge the plaintiff in error and remanding him to custody.

Before discussing the contentions made by counsel it will be proper to announce the rule as to the extent to which a court can go behind the judgment or process of another court of general jurisdiction on *habeas corpus.* Church in his work on *Habeas Corpus,* section 348, says: "Void and voidable judgments may alike be reversed on appeal or writ of error, but the former only gives authority to discharge on *habeas corpus,* which writ can not have the operation of an appeal, writ of error, or certiorari, or have the force or effect of those proceedings. Illegality can be affirmed only of radical defects, and signifies that which is contrary to the principles of law as distinguished from rules of procedure. Illegality denotes

a complete defect, in the proceedings. * * * Neither error nor the regularity of judicial proceedings can be reviewed on *habeas corpus,* whether it be some informality of proceedure before trial, error in the sentence itself, or some irregularity subsequent to sentence." "An *irregularity* may be defined to be, the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseaonable time, or improper manner." I Tidd's Prac. 512. "If the record shows that the judgment, order or process under which the party is held is not merely erroneous, but such as could not, under any circumstances, or upon any state of facts, have been pronounced or awarded by the court ordering or issuing it, then the party is entitled to discharge. But if the judgment is merely *erroneous,* the court having given a wrong judgment when it had jurisdiction, the party aggrieved can only have relief by writ of error or other process of review. He can not be relieved summarily by *habeas corpus."* Judge Freeman's notes to Commonwealth*ex rel.* Davis v. Lecky, 26 Am. Dec., 37, and numerous leading cases there cited. These general rules have been settled here as well as elsewhere. *Ex parte* Sam, 51 Ala. 34; *Ex parte* Scwartz, 2 Tex. App. 74; *Ex parte* Winston, 9 Nev. 71; *Ex parte* McGill, 6 Tex. App. 498; *Ex parte* Bowen, 25 Fla. 214, 6 South. Rep. 65; *Ex parte* Prince, 27 Fla. 196, 9 South. Rep. 659; *Ex parte* Pitts, 35 Fla. 149, 17 South. Rep. 76; *Ex parte* Senior, 37 Fla. 1, 19 South. Rep. 652; Randall v. Tillis, 43 Fla. 43, 29 South. Rep. 540; *Ex parte* Gilchrist, 4 McCord (S. C.) 233.

Sections 1477 to 1489, both inclusive, of the Revised Statutes give to our courts of chancery plenary jurisdiction over the entire subject of granting divorces, awarding alimony and maintenance to wives and the custody of children in such cases.

The first contention of the plaintiff in error is that the bill for alimony by Lillie L. P. Bronk against John P. Bronk, in which the writ of *ne exeat* was granted, contains no allegation as to the residence of said complainant, and that according to the proofs on the hearing of the *habeas corpus* it was shown that neither the complainant nor defendant in said bill for alimony were *bona fide* residents or citizens of this State, and that in such cases the courts of this State, as held in Miller v. Miller, 33 Fla. 453, 15 South. Rep. 222, were without jurisdiction to entertain such suit. The bill for alimony mentioned expressly alleges that the defendant John P. Bronk was a resident and citizen of Florida, and had been such for five years, which allegation, if proven to be true, would authorize our courts of chancery, upon a proper case made to award alimony to the wife, regardless of her place of residence, as was held in the case of Miller v. Miller, *supra*. The fact as to whether John P. Bronk was such a *bona fide* resident of Florida as to give our courts of chancery jurisdiction over him to enforce against him the marital duty of maintaining and supporting his wife, is and was one of the issues in the proceeding pending for alimony, which issue the court of chancery in which that proceeding is pending has full and general jurisdiction to pass upon and adjudicate in that proceeding, and its adjudication of it, though only *in limine,* and subject upon further investigation by it in the same proceeding to be differently adjudged, can not be collaterally enquired into

or reviewed on *habeas corpus.* In the case of Epping, Bellas & Co. v. Robinson, 21 Fla. 36, it was held, in effect, that the judgment of a court, made within its jurisdiction, that involved the adjudication of jurisdictional facts could not be attacked collateraly. The granting of the order of *ne exeat* on the bill for alimony filed, necessarily involved an adjudication *in limine* of the jurisdictional fact as to whether either of the parties to that bill were such residents of this State as to authorize that court to deal with the question of alimony between them, and its decision of that question, though it may be erroneous, can not be reviewed or interfered with on *habeas corpus,* but if erroneous, can be reversed only on appeal. There is nothing in the case of *Ex parte* Harfourd, 16 Fla. 283, that is inconsistent with this view. The latter case was where a *committing magistrate* bound a party over to keep the peace. On *habeas corpus* from the Circuit Court, it was held that as the Circuit Judges are invested here with the authority of committing magistrates they could, on *habeas corpus,* in such cases inquire into the cause of the imprisonment on the proofs upon which the committing magistrate acted, or upon further proofs taken in the *habeas corpus* proceeding, and thereon to discharge, admit to bail or remand to custody, as the law and the evidence shall require. The writ of *habeas corpus* is more far reaching in this class of cases for the reason that committing magistrates are courts of inferior and limited jurisdicton and that no appeal or writ of error lies from their commitments.

It is next contended that the Circuit Court had no jurisdiction to grant the writ of *ne exeat* in the case before it, because the bill is not predicated upon the existence of any ground of divorce mentioned in sections 1484 and 1485 Revised Statutes, and that by section 1487, *ne exeat*

can only be issued where there is a decree for alimony under the two first mentioned sections, and further that the writ can not issue before a decree for alimony has been rendered. As all this contendion under the *habeas corpus* proceedings is in the nature of a collateral attack upon the order of a court of general jurisdiction, we are not at liberty under the rule already stated to go further into the inquiry than to see if the court was acting within the limits of its jurisdictional powers. Under an allegaton, however, that the court acted without jurisdiction we should go far enough to see whether in reality this be true, and also whether or not the action of the court is illegal to the extent of rendering its decision entirely void, and not merely irregular. The bill in this case is for maintenance under section 1486 Revised Statutes, and if it be conceded that there is no authority for a writ of *ne exeat* under it derived from the authority given for the writ under section 1487, referring in specific terms to alimony under sections 1484 and 1485, it does not follow that the writ can not issue at all. Section 1487 does not deny the use of the writ in applications under section 1486, nor is it restrictive, in our judgment, of the writ to cases arising solely under sections 1484 and 1485. The maintenance section—1486—declares it to be the duty of husbands, having ability to maintain their wives and minor children, and when there is a failure to do so a wife, whether living with her husband or separte from him by his fault, may go into a court of chancery by bill for the enforcement of this duty. This right of the wife is an equitable demand for maintenance in the nature of alimony arising out of the duties incident to the marital status, and can only be secured or enforced by her in a court of equity. The writ of *ne exeat* was commonly used in

cases of equitable demands, and at an early date it was
applied in cases of alimony under certain conditions.
Though section 1487 may not of itself authorize the writ
in proceedings under section 1486, yet if a proper case
should be presented for the writ under general princi-
ples of law or other provisions of our statutes it should
of course, be awarded.   The second part of the objection
involves a reference to some extent to the practice of the
court in such cases, and consequently the power of the
court in awarding the writ.

As we have already said, the demand sued for in the
case where the *ne exeat* was granted, is in the nature of
alimony, and arises from the duty imposed by law upon
the husband to support and maintain the wife under the
circumstances designated in the section of the Revised
Statutes referred to.   That statute invests the courts of
this State with power to enforce such maintenance upon
bill filed and suit prosecuted as in other chancery cases.
It is conceded by the English Courts of chancery, which
alone had jurisdiction to issue *ne exeat* as a judicial pro-
cess, never issued such writs until after a decree for ali-
mony rendered by the Ecclesiastical Courts, and then only
for the amount sodecreed. By the English practice, equity
had no jurisdiction to decree alimony in any case. It could
only be obtained in the Ecclesiastical courts whch alone
had jurisdiction to decree it, but as their power to enforce
their decrees was very limited, and the common law took
no notice of their decrees in such matters, equity, in order
to aid the enforcement of such decrees, when necessary,
issued the writ of *ne exeat,* when it was made to appear
that the husband was about to leave the realm to avoid a
decree for alimony rendered by the Ecclesiastical Courts.
As there was no jurisdiction in equity, for any purpose,

until a decree for alimony had been rendered in the Eccle-
siastical Courts, the writ *ne exeat* would not issue until
such decree had been made.   Under our system chancery
has exclusive jurisdiction of all suits for divorce and for
alimony and maintenance given by statute, and the statute
giving jurisdiction in the class of cases designated in sec-
ton 1486 Revised Statutes, under which the bill was filed
upon which the writ *ne exeat* issued in this case, expressly
provides that the court shall make such orders as may be
necessary to secure to the wife such maintenance.   The
power in our courts of equity to issue *ne exeat* in proper
cases   is   expressly   recognized   by   statute   and   the
matter   of   issuing   such   writs   is   to   some   extent
regulated   by   sections   1473 - 1476   Revised   Statutes.
By   section   1473   it   is   provided   that   no   writ
of   *ne   exeat*   shall   be   granted   until   a   bill   sworn
or supported by affidavit is filed praying such writ, except
in certain cases not necessary to mention.   It is further
provided by that section that the writ may issue in any
case where the issuance shall seem to the chancellor just.
We are of opinion that under our system the writ *ne exeat*
may now be issued by our equity courts in suits for main-
tenance, before a decree fixing an amount to be paid is
rendered, in all cases where it seems to the chancellor
just to issue it and a necessity therefor exists.   Denton
v. Denton, 1 John. Chy. 441; People ex rel. Porteus v.
Barton, 16 Colo. 75, 26 Pac. Rep. 149; Bish. Mar., Div.
and Sep. sections 1112, 1113.   The allegations of the bill
upon which the writ issued are sufficient if true, to give
jurisdiction to the court to issue the writ complained of,
and the court had power to issue it, notwithstanding the
fact that no sum had then been decreed.

It is next contended that the writ of *ne exeat* will not be issued when useless, and that it will not be allowed unless it is apparent from the bill that the performance of the decree in the suit in which it is applied for can be enforced against the person of the defendant; and that the only relief prayed in the bill in this case being alimony for support of the wife, a decree therefor can not be enforced by imprisonment of the husband, as alimony without divorce is merely a debt, and that our constitution forbids imprisonment for debt. It is almost universally settled that alimony or maintenance from the husband to the wife is not *a debt* within the meaning of the constitutional inhibition against imprisonment for debt. It is regarded more in the light of a personal duty, due, not alone from the husband to the wife, but from him to society, that the courts of equity have the power to enforce by detention of the person of the husband, in cases where he can discharge it but will not. People *ex rel.* Porteus v. Barton, *supra,* and cases there cited.

The next contention of the plaintiff in error to the effect that before *ne exeat* can properly issue it must appear that the debt will be endangered by the defendant's going abroad. This contention may be admitted to be true, but the allegations of the bill in this case make such endangerment quite apparent here.

The next contention of the plaintiff in error is that the *ne exeat* is void because issued without requiring a bond from the complainant with sureties prior to awarding the same. The non-observance of a statutory prerequisite to the issuance of the writ, such as requiring the complainant to give bond, does not render the writ absolutely void, but, if erroneous in a case like this, is such an irregularity as can only be corrected in a direct proceeding on appeal from the order awarding it.

The next contention of the plaintiff in error is that the order is void requiring him to be held in custody until he gives a bond conditioned, among other things, that he pay the alimony and other sums decreed by said court to be due, or upon appeal by the appellate court. It may be conceded that the order of the court requiring the defendant to give a bond conditioned to pay the alimony decreed by the court, or by the appellate court on appeal and to abide and perform the decrees of the court before being liberated from the writ of *ne exeat* was erroneous, as being outside of and beyond the scope and purpose of *ne exeat,* but this does not entitle the plaintiff in error to his discharge on *habeas corpus,* for the reason that part of the conditions of the *ne exeat* bond as ordered were proper, *viz*: that he should not depart the State without leave of the court, and no tender of any bond thus properly conditioned having been made. *Ex parte* Mooney 26 W. Va. 36; *Ex parte* Bowen, 25 Fla. 214, 6 South. Rep. 65.

It is next contended that the proofs taken show that the complainant wife is not entitled to alimony, and that, therefore, the writ of *ne exeat* should be discharged. This contention, if true, is essentially a matter for enquiry and adjudicaion in the suit pending for alimony, and can not be reviewed or enquired into collaterally through *habeas corpus.*

The judgment of the Circuit Court in the *habeas corpus* proceeding is hereby affirmed at the cost of the plaintiff in error.

Before the argument on the merits in this court the complainant wife Lillie L. P. Bronk by her solicitors moved this court for an order requiring the plaintiff in error John P. Bronk to pay her alimony *pendente lite* and

attoneys' fees to represent her interests before this court on the writ of error in the *habeas corpus* proceeding. We cannot see how a complainant wife who, in a proceeeding by her for alimony against her husband, secures a writ of *ne exeat* against him can acquire such a status before the court in an *ex parte* proceeding on *habeas corpus* brought by the husband to test the legality of his detention under such *ne exeat*, as that she can before an appellate court, on writ of error from the judgment in such *habeas corpus* proceeding brought by the husband as plaintiff in error, properly claim suit money or counsel fees or alimony *pendente lite* such writ of error. The granting of alimony and counsel fees is exclusively within the juisdiction of the courts of equity here, while *habeas corpus* is a proceeding at law.

This motion is denied.