OSCAR W. BURSIEL and METROPOLITAN LIFE INSURANCE COMPANY v. SELMA BURSIEL.

168 So. 3.
Division B.
Opinion Filed April 29, 1936.
Rehearing Denied May 21, 1936.

188

*McKay, Dixon & DeJarnette,* for Appellants;
*Price & Price,* for Appellee.

ELLIS, P. J.—This case comes here upon appeal by Oscar

Bursiel and Metropolitan Life Insurance Company from a final decree in a suit by Selma Bursiel, wife of Oscar Bursiel, against him for separate maintenance unconnected with causes of divorce, Section 4989, C. G. L. 1927. The Metropolitan Life Insurance Company was made a party because Oscar Bursiel has an annuity contract with the Company under which he receives monthly from the Company the sum of $107.20, which is his only source of income, and the wife desired an injunction against the Company restraining it from paying the monthly income over to the defendant, her husband.

The bill alleges that the complainant and her husband are each resident citizens of the State of Florida; that they were married on February 19, 1935. The bill was filed on May 29th of the same year. It is alleged that on May 7, 1935, the defendant Oscar left the house where he and the complainant were living "and has not been heard from since"; that "plaintiff believes and avers the fact to be that the said defendant has left the State of Florida and will not return." Yet it is alleged in the bill, which is sworn to by the complainant, that her husband is a resident citizen of the State of Florida.

Two days after the filing of the bill Honorable Worth W. Trammell, Circuit Judge, granted a temporary injunction against the Insurance Company restraining it from paying to Bursiel any sum of money under the annuity contract.

On June 1st the complainant obtained an order for substituted service of process on her husband by publication, upon her affidavit that she believes that he "is a resident of the County of Dade and State of Florida," and that he conceals himself so that process cannot be served upon him. Bursiel, however, appeared by solicitors in July.

In July the Circuit Judge ordered Bursiel to pay to the complainant on or before July 17th the sum of $100.00 as temporary maintenance and the sum of $25.00 on Monday of each week thereafter, and to complainant's solicitors $100.00 as "temporary attorney's fees." A few days later the court by order decreed that the money required by Oscar Bursiel to be paid to the complainant to be a "lien upon all of the right, title and interest of Oscar W. Bursiel in and to" the annuity contract with the Insurance Company. That order was followed by one against the Company requiring it to pay into the registry of the court the amount due to Bursiel upon the annuity contract and thereafter the amount to become due each month.

In August, 1935, the defendant, Oscar Bursiel, moved to dismiss the bill. The Company also moved to dismiss the bill. Those motions were denied, and the two defendants were allowed until September 3, 1935, to answer the bill of complaint.

The answer of the defendant, Bursiel, filed before the expiration of the date fixed for filing his answer denies that he is a resident of Florida. It admits that he and the complainant were married in February, 1935; avers that the complainant is a woman of bad temper, a spendthrift, and spends more than the defendant's income, which is only $107.20 per month, paid to him under the annuity contract. It avers that he left Miami on May 7, 1935, because he and his wife could not live together in peace; that his wife demanded of him more money than he could earn; that he is a wool worker by trade, fifty-five years old, and in 1929 injured his right wrist permanently so that he is unable to work at his trade and is absolutely dependent upon his annuity contract, and that is insufficient to support both him and the complainant. It is alleged

that the complainant is thirty-five years old, a trained nurse, thoroughly experienced and competent to earn a good living at her profession.

The answer avers that in March, 1935, he and the complainant entered into an agreement for the division of the properties and to release each other from all liabilities occasioned by their marital relationship. Under that agreement the complainant received certain furniture purchased from "Burdine's Inc.," which is still in that Company's possession; the title certificate to a Ford automobile, and the defendant's interest in a lot in Dade County. The contract, which was made a part of the answer, purports to obligate the complainant to a release of the defendant from all claims growing out of the marriage, and that the complainant had accepted the property transferred to her in "lieu of alimony, maintenance, dower, or for any other cause," and it was agreed that the parties should live separate and apart and neither would contract any liability that would involve the other.

It is averred that under that agreement the complainant obtained a refund of a thousand dollars from "Burdine's Inc." On account of the furniture. It is averred that after the agreement the parties lived together for about a month as husband and wife, but the agreement is still in force as the complainant retained all the property secured thereunder.

Upon petition filed in September the court ordered the Insurance Company and Oscar Bursiel to appear and show cause why they should not be held in contempt of court for not complying with its order relating to the payment of money. Both defendants answered. The Insurance Company paid the money into the registry of the court and Bursiel answered that the only money he had or con-

trolled was the monthly income from the Insurance Company, the payment of which the court had enjoined.

A master was appointed to take testimony and report his findings, the time for which was limited to thirty days.

On September 20th the Chancellor entered an order against the defendant, Bursiel, to show cause why he should not be held to be in contempt of court for failure to comply with the order of July 12, 1935, requiring him to pay to the complainant $100.00 temporary alimony and $25.00 on Monday of each week thereafter and $100.00 as temporary attorney's fees. Bursiel was required to comply with the order before September 23, 1935, by filing in the registry of the court his consent that $300.00 of the money deposited by the Insurance Company in the registry of the court be applied to the payment of the money ordered to be paid by the order of July 12, 1935, and that in default thereof Bursiel be held to be in contempt of court and that the answer filed by him to the bill of complaint be stricken from the files.

On September 24th the court ordered that Bursiel be adjudged to be in contempt of court and that his answer be stricken from the files.

The master made his report. Final hearing thereon and on the bill of complaint occurred October 7th, and decree was rendered.

The order of September 24th, that a decree *pro confesso* be entered against Bursiel notwithstanding his answer to the bill was confirmed; the report of the master; that the court had jurisdiction of the cause; that the defendant, Oscar Bursiel had elected to live separate and apart from the complainant who was without means of support except for her husband, who had not provided such means; that the equities were with the complainant; that $25.00 per week

was a reasonable sum to be allowed the complainant as and for separate maintenance and $500.00 was a reasonable solicitor's fee to be allowed and $50.00 for master's fee, was confirmed. The annuity contract which Bursiel had with the Insurance Company was appropriated to the benefit of the complainant to the extent of the temporary and permanent maintenance allowed to her and sums for solicitor's fees and court costs. The sum of $475.00 allowed to complainant by orders of July 12th and September 30th for temporary maintenance and temporary attorney's fees and other sums required by the decree to be paid were declared to be a lien upon the right, title and interest of Bursiel in and to the annuity contract, and the Insurance Company required to pay the "sums of money due and to become due under the annuity contract" to the clerk of the court. The weekly payments to be made to complainant were reduced to $20.00.

About two weeks prior to the date of the decree solicitors for Bursiel defendant gave notice of their purpose to take his testimony *de bene esse* under the provisions of Section 47 of Chapter 14658, Acts of 1931, known as the Chancery Act. That testimony was filed October 11th, which was after the entry of the decree.

The following day the appeal from the final decree was taken.

The first question presented is the failure of the complainant wife to establish her residence in Florida; the defendant Bursiel's residence at the time of the institution of the suit being in a State other than the State of Florida. Upon the subject of the defendant Bursiel's residence the bill in one clause alleges it to be in Dade County, Florida. In a different clause of the bill the complainant alleges that the defendant Bursiel "has left the State of Florida and will

not return." The allegations of the bill are sworn to by the complainant. Later, to obtain an order of publication of notice to appear, the complainant filed an affidavit that the defendant "Bursiel, is a resident of the County of Dade and State of Florida" and conceals himself so that process cannot be served upon him.

In a proceeding of this kind, however, the allegation of residence of the defendant, if the complainant rests upon the defendant's residence in the State to establish the court's jurisdiction, is necessary to be proved. The answer of the defendant denies that he was a resident or citizen of the State and avers that he is not a resident of the State. The answer of the Insurance Company admitting the allegation' of the bill that Bursiel was a resident of Florida is not binding upon him. 1 Ency. Pl. and Prac. 951.

The motion to dismiss the bill presented the question of the Court's jurisdiction.

As to residence of the defendant, Bursiel, insofar as jurisdiction rested upon that allegation, see Warren v. Warren, 73 Fla. 764, 75 South. Rep. 35, L. R. A. 1917E 490.

Residence in this State of one of the parties is essential to be shown. Either the husband or the wife, where the latter seeks the relief provided for by Section 4989 C. G. L. (Sec. 1934 G. S. 1906) must at the time the bill was filed have been "actually, legally and *bona fide* domiciled in this State as a citizen thereof" to confer jurisdiction upon the court. See Miller v. Miller, 33 Fla. 453, 15 South. Rep. 222; Warren v. Warren, *supra;* Wood v. Wood, 56 Fla. 882, 47 South. Rep. 560.

Neither allegation nor evidence shows that at the time the bill was filed the defendant was actually, legally and *bona fide* domiciled in this State as a citizen thereof.

There is something in the record to show that having a

small amount of money on hand and an annuity of $107.20 per month which he had purchased from an insurance company he came to Florida. He was a resident and citizen of the State of New York. There is no evidence as to the purpose he had in coming to this State; certainly nothing to show that he intended to reside here as a citizen and to abandon New York State as his residence. He met the complainant by chance. She was without money and without the means to provide herself with meals and lodging. She said she was unmarried; that she had divorced her husband. Within a short while, not many days, they agreed to marry and did marry. He purchased a house and lot, paid part of the purchase price thereof in cash, bought furniture with which to make a place for him and his wife to live. He acquired an automobile. Then his wife refused to live in the house. They could not agree. Their married experience was short. They agreed to separate. He turned all the property over to her. Afterwards they lived together for a short while, a few days only, in a different place in the City of Miami. They could not live in harmony, so he consulted a lawyer who advised him to leave the State, which he did and was out of the State living in New York when the complainant brought this suit for maintenance.

The complainant's mercenary motive and aggressive avarice in all her dealings with her husband is perfectly obvious. Her conduct before their marriage and during their brief living together and after their agreed separation evinces her purpose to secure for herself the benefits of his annuity and such other property as she suspected he possessed. He returned to his home State upon the advice of his attorney, who shortly afterwards as the solicitor for complainant brought this suit.

The complainant, however, may maintain the suit and the

court would have jurisdiction of the subject matter if she at the time of exhibiting her bill was a *bona fide* actual resident of the State. She is required to be legally, actually and *bona fide* domiciled in this State as a citizen thereof, however, when the husband is not, for the chancery court to have jurisdiction to enforce the husband's duty of maintenance and support of his wife. See Chaves v. Chaves, 79 Fla. 602, 84 South. Rep. 672.

The evidence which the Chancellor had before him is of practically no persuasive value whatsoever to establish the complainantt's residence in this State legally, actually and *bona fide* as a citizen. There is no evidence of the good faith of her allegation in the bill that she is a resident citizen of the State, which she makes in conjunction with the residence of her husband as being in this State.

Her legal residence is that of her husband in New York State. She and he lived for the brief period of thirty days approximately as husband and wife. The greater part of the time they spent in apartment houses in Miami. During that time she obtained the equitable interest in the house and lot he bought, the value of the furniture purchased, and the automobile, and had herself established in an apartment house and her expenses paid to Ohio to look after the estate or property of her son, whose father, after her marriage to the defendant, was killed in an automobile accident in that State. There is no evidence to show that the complainant came to this State with the intention of permanently residing here. Other allegations of the bill and the evidence on the subject of her residence weaken rather than support the general allegation that both complainant and the defendant were residents of the State. At the time her evidence upon the subject of her residence was taken she was living at the Miami Colonial Hotel.

Under the authority of the case of Chaves v. Chaves, *supra,* the allegation and proof are insufficient to show that the complainant was at the time of the filing of the bill a *bona fide* legal and actual resident of Florida.

The court therefore was without jurisdiction. All orders made by the Chancellor in the case relating to defendant Bursiel and the Insurance Company were null and void. The motion to dismiss the bill should have been sustained. The orders and decrees concerning the payment of any money to the complainant by the defendant for temporary and permanent maintenance and solicitor's fees were erroneous and without authority, as were also the orders affecting the Insurance Company and the annuity. The money paid into the registry of the court by the Insurance Company is directed to be paid to the defendant, Oscar Bursiel, or his attorney, and the bill ordered to be dismissed.

Reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., not participating.