# JOHN WIGHTMAN
## *v.*
## MATILDA WIGHTMAN.

45  167
41a  21
41a 162

45  167
150  425

45  167
49a  92

45  167
57a  192

45  167
163  181

45  167
63a  294

45  167
71a  308

45  167
83a  369

45  167
184  376
184  475

45  167
98a  1133

45  167
195  3339

45  167
e212  3498

1. CHANCERY—*process of court—attachment for contempt.* A court of chancery has power to issue attachments for contempts in refusing to obey orders made conformable to law.

2. SAME—*imprisonment for debt.* The commitment of a defendant for contempt for refusing to pay alimony, is not an imprisonment for debt, from which he can claim exemption under the 15th section of article 8 of the Constitution.

3. A court of chancery has power, in addition to making a decree for alimony a lien on the lands of a defendant, to enforce the decree by attachment for contempt, and if the defendant remains contumacious, may also sequestrate his real and personal property, as a means of enforcing performance of the decree.

4. The act of June 22, 1852, provides means of relief to a defendant committed for any contempt of court in not performing any order or decree for the payment of money.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

This was a proceeding instituted by Matilda Wightman for an attachment against John Wightman for a contempt of court in refusing to pay alimony as provided in a decree for divorce between the parties. An attachment was issued, upon which the defendant was arrested and brought into court. The defendant moved to be discharged, which was refused. Refusing to purge himself of the contempt, he was adjudged to be in contempt and committed to jail. An appeal was prayed, and refused. The case was brought to this court by writ of error.

The facts are sufficiently stated in the opinion.

Messrs. BRYAN & COCHRAN, for the plaintiff in error.

Mr. JOHN B. COHRS and Mr. E. N. POWELL, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

It appears from the record in this cause, that Matilda Wightman, the defendant in error, had, at the March Term, 1859, of the Peoria Circuit Court, obtained a decree of divorce against John Wightman, and an allowance of alimony of $500 per annum, payable in semi-annual installments of $250, and that the decree was made a specific lien on the lands of the defendant, and upon the rents and profits thereof.

The installments for 1866, and that due January 1, 1867, being in arrears, Matilda Wightman, at the June Term, 1867, of the Peoria Circuit Court, entered her motion to place the cause of *Matilda Wightman* v. *John Wightman* on the docket, and for a writ of attachment against the defendant for a contempt of court, in not complying with the decree of March Term, 1859 ; and thereupon filed the affidavit of James Haines, by which it appeared that he, as the agent and attorney in fact of the plaintiff, had applied to the master in chancery of Tazewell county, by petition to notify the defendant to pay these sums so in arrears, he having failed to pay them on demand made by him, Haines, or that in default of such payment, he, the defendant, would be liable to be arrested for contempt and have his estate sequestrated. This notice was given by the master in chancery accompanied by a copy of the decree of March Term, 1859, by the terms of which, the master in chancery of Tazewell county was required to compel the payment of the alimony. The notice was dated May 21, 1867, and required the defendant to pay to James Haines, the attorney in fact of plaintiff, the sum of $750, the amount of the deferred installments, on or before the second Monday of June next, and in default of such payment, together with the costs of this proceeding, that an order would be issued for his arrest and imprisonment for contempt of court, in not paying this alimony, and that his property, real and personal, would be sequestrated to pay the above sum of $750.

This process was directed to the sheriff of Tazewell county,

and by him duly served upon the defendant, on the 23d day of May, 1867.

At the June Term, 1867, James Haines, as agent and attorney in fact of the plaintiff, made affidavit that since the notification aforesaid, the defendant had not paid the money in the order of court and notice mentioned, or any part thereof; and he further stated in his affidavit that the defendant, since the rendition of the decree, had sold several of the tracts of land named in the decree, and refused to pay the plaintiff unless she would release her claim upon the lands set apart as security for her alimony; and he further stated in his affidavit that defendant desired to force the plaintiff to sell the premises named in the decree, in order that the title might thereby become changed, and the same, in the hands of third parties, become released from the lien imposed by the decree; and he further stated in his affidavit that defendant threatened that unless plaintiff would release her claim, he would no longer keep the premises in repair — the orchards, the fences, or the dwelling-house, but would allow them "to run down and deteriorate in value, and so lessen the security of the plaintiff for her alimony."

Another affidavit, on the 19th of June, 1867, was made by Haines, as agent, setting forth the sale of some of the lands incumbered by the decree, but as it was excluded by the court, it is unnecessary to notice.

At the June Term, 1867, the motion for the attachment coming on to be heard the court granted the writ, for contempt in not paying the money decreed to the plaintiff, and made it returnable *instanter*.

The sheriff of Tazewell county, to whom the writ was directed, arrested the defendant, and produced his body in court; whereupon the defendant, in proper person, moved the court for his discharge from arrest for the following reasons:

1. The application for said order was not made by said complainant.

2. Said application was not made by petition nor upon due notice to defendant.

3. The agent, or alleged agent, by whom the motion for said order was made, did not produce or exhibit any legal authority from complainant to act in her behalf in the premises.

4. Said order was granted upon affidavit and motion of a person who exhibited no legal authority to make the same.

5. Said order was made upon an affidavit showing no legal or sufficient grounds for the same.

6. Said order is in violation of the 15th section, article 8, of the Constitution of this State.

7. Said order does not state any grounds for issuing said attachment.

8. Said order is in effect a new or supplemental decree in said cause.

9. Said order is wholly unnecessary, supererogatory and oppressive, inasmuch as the decree made in said cause, at the March Term, A. D. 1859, provides efficient means for its own execution.

10. The affidavit of James Haines, which was the only evidence adduced to sustain the motion for said order, does not show any legal cause or ground for making the same. ·

11. Said order is in other respects informal, illegal, insufficient and contrary to the rules and practice of courts of equity and the laws of this State.

12. Said affidavit does not show that the defendant has any property or means other than that described in said decree of March, 1859, out of which he can pay such alimony.

13. Said affidavit does not show any reason why said alimony cannot be made out of the real estate upon which said decree is made a lien.

14. Said affidavit does not show any demand made by complainant, or her authorized agent, of said alimony upon defendant; nor does it show that a copy of said decree, or of any writ or order commanding obedience to said decree, was served upon said defendant by complainant or her authorized agent.

15. Said affidavit does not show that the "premises" mentioned therein, need or require any repairs to be made, nor

any duty on the part of the defendant to keep the same from deteriorating in value.

The court overruled the motion, to which the defendant excepted, and entered the following order : Defendant failing to pay alimony, and refusing to purge himself from contempt in non-payment, ordered, that defendant be turned over to the common jail of Peoria county, and remain in custody of the sheriff until he pay complainant $750, due under the decree, with interest and costs, clear his contempt, and the court make further order to the contrary.

The defendant prayed an appeal from this order, which the court refused to allow, for the reason " that an appeal did not lie from the order."

On the 8th of July, thereafter, while the defendant was in prison, the complainant entered her motion for a writ of sequestration against the real estate and rents and profits thereof, and against the goods and chattels and personal estate of the defendant, which the court granted, and the same was issued to four commissioners named therein, to all which the defendant excepted.

To reverse these several orders the record is brought here by writ of error, and various errors assigned, based in great part on the reasons assigned for the discharge of defendant, as above set forth.

The cause has been argued with ability by the counsel on both sides, and we have been greatly impressed thereby. It is a case of the first impression in this court, and must be decided on authority, and that is to be looked for in our legislation on the subject of the powers of a court of chancery, and that of the English chancery in like cases.

The first section of the Chancery Code provides as follows : The several Circuit Courts of this State, in all causes in which they may have jurisdiction as courts of chancery, shall have power to proceed therein according to the mode hereinafter prescribed; and when no provision is made by this chapter, according to the general usage and practice of courts of equity,

or agreeably to such rules as may be established by the said courts in that behalf. Scates' Comp. p. 138, ch. 21.

By section 17 the judges of the Circuit Courts, in their respective circuits, may establish rules of proceeding in chancery, and make all needful orders and regulations consistent with the practice of courts of chancery, in cases not provided for by law. Id. 140.

By section 13 express power is given to the court, when any bill is taken for confessed, to make such decree thereon as may be just, and to enforce such decree, either by sequestration of real and personal estate, by attachment against the person, by causing possession of real and personal estate to be delivered to the party entitled thereto, or by ordering the demand of the complainant to be paid out of the effects or estate sequestrated, or which are included in such decree; and by the exercise of such other powers as pertain to courts of chancery, and which may be necessary to the attainment of justice. Id. 140. And the 14th section provides, that a decree for money shall be a lien on the lands and tenements of the party against whom it is entered, to the same extent, and under the same limitations, as a judgment at law. Id.

By section 46 it is provided, that in certain cases an execution may issue on a final decree, to be served by the sheriff, "or the court may, if necessary, direct an attachment to be issued against the party disobeying such decree, and fine or imprison him, or both, in the discretion of the court, and may also direct a sequestration for disobedience of any decree." Id. 144.

By section 6 of chapter 23, title "Divorces," it is provided, "when a divorce shall be decreed, it is the duty of the court to make such order touching the alimony and maintenance of the wife, etc., as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just; and in case the wife be complainant, to order the defendant to give reasonable security for such alimony and maintenance, or may enforce the payment of such alimony and maintenance in any other manner consistent with the rules and practice of the court. Id. 151.

It appears from the record, that the decree for divorce was taken *pro confesso* against the defendant, and the amount of alimony allowed was upon his admission, in open court, that his property was then worth $10,000. What the grounds for divorce were, do not appear on this record; whatever they were, they were admitted by the defendant.

The question arises, if, in view of the legislation of this State to which we have above referred, the court overleaped its powers in its action in the premises, — for all the reasons urged by the plaintiff in error may be resolved into this:

That a court of chancery has power to issue an attachment for contempt in refusing to obey an order made conformably to law is not, and cannot be, denied. Scates' Comp. 627, § 48.

Was the order conformable to law, and did the defendant refuse to obey such order? That he did is undisputed. Had he proper grounds for refusal? His counsel insist that he had, because the decree for alimony provided the means for its own execution, and the master could sell the land for the payment of the installments.

This may all be true, but it does not follow the court could not consider the party in contempt for refusing to pay the amount decreed. We are of opinion, on the facts before the court, in the manner they were presented, fully justified the court in awarding the attachment as for a contempt. This did not necessarily result in the commitment of the defendant, for it was in his power to purge himself of the contempt, by showing to the court why he was unable to pay the installments. Disasters may have overtaken him, rendering him unable to perform the decree; various circumstances might have been brought to the knowledge of the court, divesting his conduct of any imputation of contempt, and his discharge thereby had. But the record shows he did not seek to purge himself from the contempt, but remained contumacious. The court could do nothing less than commit him to jail. Such a commitment is not, as we understand the Constitution and the laws enacted on that subject, an imprisonment for debt. The amount found by the decree was not originally founded upon a contract, and it

was such debts only from which the debtor could claim exemption from imprisonment. The decree in this case is one thing, and the means to cause its payment another, and the means adopted were in accordance with the 13th section of the Chancery Code above cited, which has never been held as contravening the 15th section of the 8th article of the Constitution.

The non-performance of the decree being adjudged a contempt, the power to attach for the contempt cannot be questioned.

The order adjudging the non-performance of the decree a contempt being a lawful order, the court was allowed the usual means to enforce the order, by issuing an attachment therefor, and committing him on failure to purge himself of the contempt.

But, admitting this power, the plaintiff in error insists, that the order of sequestration was illegal and unnecessary, as the office of such writ is simply to make the money, which the master in chancery had full power to do, by sales under the decree of March, 1859.

Power was given the master to make sales from time to time, of the particular tracts of land described in the decree, but this remedy was not entirely sufficient, as the land, if sold, might not meet the demands of the decree, and from the facts stated in the affidavit of Haines, and uncontradicted and undenied, it was the design of the plaintiff in error to deteriorate their value by neglect. This order of sequestration operates upon all the estate of the defendant in the decree, real and personal. It would seem from the silence of the plaintiff in error, when brought up for contempt, that he had abundant means to pay these installments, but was disposed to set the court at defiance. This is the inference from his conduct, and if a correct one, the court would have been derelict in its duty had it failed to employ all the legitimate enginery at its command to overcome this spirit and bring him to terms.

We have no doubt a court of chancery has power, in addition to making a decree for alimony a lien on the lands of a defendant, which it would be without a decree to that effect, to

enforce the decree by attachment for contempt, and if the defendant remains contumacious, defying the court, may also sequestrate his estate, real and personal, as a means of enforcing performance of the decree.

The course adopted in this case, and the evidence on which the proceedings were based, were sufficient to authorize the order. The fact that Haines showed no authority, written or otherwise, to demand payment of these installments, is of no importance, as the plaintiff in error did not require him to show his authority, but treated him and his demand with indifference.

We perceive nothing in the record to require us to interpose.

If the plaintiff in error does not wish to remain committed, the act of 1852 has provided a sufficient mode by which he can relieve himself. Scates' Comp. 678.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*

WALKER, J., dissenting.