JESS CAIN, APPELLANT, V. IRA MILLER, SHERIFF, APPELLEE.

FILED DECEMBER 30, 1922.. No. 22468.

1. **Divorce:** TEMPORARY ALIMONY. An order for the payment of temporary alimony for the support of a wife possesses different characteristics from an ordinary debt. It is designed to secure the performance of a legal duty in which the public has an interest. It may be modified or set aside upon a proper showing by the court which rendered it, as the circumstances may warrant.

2. ———: ———: CONSTITUTIONAL LAW. An order to pay temporary alimony is not a mere debt, and the provision of the Constitution that "no person shall be imprisoned for debt in any civil action on mesne or final process, unless in cases of fraud," does not apply to a wilful and contumacious refusal to obey an order of the court to pay temporary alimony.

3. ———: ———: REMEDIES. The first section of chapter 40, Laws 1883 (Comp. St. 1922, sec. 1534), when considered in connection with section 2 of the act (Comp. St. 1922, sec. 1535), to the effect that "the remedy given by this act shall be held to be cumulative and in no respect to take away or abridge any subsisting remedy or power of the court for the enforcement of such judgments and orders," *held* not to take away the then subsisting powers of courts of chancery to enforce obedience to their orders in divorce cases by contempt proceedings.

4. ———: ———: POWERS OF DISTRICT COURTS. It was formerly the practice in England that decrees of the ecclesiastical courts in divorce actions, such courts being of limited powers, were enforced by the chancery courts. When the whole subject of divorce and alimony was committed by statute to the district court of this state, possessing full equity powers, such courts were invested with the same power to enforce their decree in divorce cases as the chancery courts of England had.

5. ———: ———: CONTEMPT: PENALTY. It is the duty of a husband to support his wife. When, in an action for divorce, a husband has been ordered by the court to pay temporary alimony for the support of his wife during the pendency of the suit, and the husband, being of sufficient ability to pay the same, wilfully and contumaciously refuses to pay, having no just or reasonable ground for his failure or refusal, such refusal constitutes contempt of court, and such order may be enforced by imprisonment until the amount ordered is paid.

6. ———: ———: ———. Imprisonment is a serious and dras-

tic remedy. No one should be committed to jail for refusal to pay temporary alimony unless it is clear that the refusal is wilful and contumacious. If the defaulting husband has in good faith no means or ability to procure means wherewith to pay the alimony, does not wilfully refuse to obey the order of the court, and has just or reasonable cause for his failure to do so, he may purge himself of the contempt by so showing, and in such case would be entitled to his discharge.

7. **Courts:** OVERRULING FORMER DECISIONS. While the court is reluctant to interfere with former decisions, yet where they have not become a rule of property, and pertain merely to a question of practice, and the court did not have the aid of counsel to present both sides of the question before the basic decision was made, we will not hesitate to adopt the proper practice and set aside the erroneous decisions.

8. **Cases Overruled.** *Segear v. Segear,* 23 Neb. 306, and *Leeder v. State,* 55 Neb. 133, examined and overruled.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, FREDERICK E. SHEPHERD, WILLIAM M. MORNING and ELLIOTT J. CLEMENTS, JUDGES. *Affirmed.*

*W. W. Towle* and *Francis V. Robinson,* for appellant.

*Claude S. Wilson* and *Albert S. Johnston, contra.*

*C. C. Flansburg, amicus curiæ.*

Heard before MORRISSEY, C. J., LETTON, DAY, ROSE and ALDRICH, JJ., REDICK, District Judge.

LETTON, J.

Relator was confined in the county jail of Lancaster county under a commitment for contempt on account of his failure to comply with an order of the district court to pay temporary alimony, suit money and attorney's fees for the benefit of his wife, who had begun an action for divorce against him. He applied to the district court for a writ of habeas corpus to discharge him from custody. The writ was denied, and from the order denying the writ he appeals.

The sole question presented is: Did the district court possess jurisdiction to punish, by contempt proceedings,

the refusal of relator to obey the order? If the case at bar falls within the principles of *Segear v. Segear,* 23 Neb. 306, and *Leeder v. State,* 55 Neb. 133, and if we adhere to the views expressed in those cases, then the relator is entitled to his discharge.

In *Segear v. Segear,* 23 Neb. 306, an order to pay temporary alimony had been made. Defendant failed to comply with this order, and was cited to appear and show cause why he should not be dealt with for contempt. He appeared and alleged he had no property or other means of complying with the order of the court. After the granting of a divorce to the wife, it appearing that defendant had neglected to pay the allowance of alimony, amounting to $225, the court ordered that he be committed to jail until he pay, or satisfactorily secure the payment of, that sum and costs, on which a *capias ad satisfaciendum* issued and he was committed to jail. On error proceedings to this court, he was discharged. In the opinion by Cobb, J., section 1 of the amendatory statute of 1883 (Laws 1883, ch. 40) was quoted. It provides: "All judgments and orders for payment of alimony or of maintenance in actions of divorce or maintenance shall be liens upon property in like manner as in other actions, and may in the same manner be enforced and collected by execution and proceedings in aid thereof, or other action or process, as other judgments." It was said: "The provisions of this section establish the character of an order for the payment of alimony with that of a judgment at law, and limits the enforcement and collection to the same means." It was also said that the commitment for contempt was not a lawful remedy, nor was the nonpayment of the judgment "wilful disobedience" to the order of the court. It may be noted that there was no appearance in this court for defendant in error, so that the court was not aided by the argument of counsel, or the production of authorities presenting the contrary view.

In *Leeder v. State,* 55 Neb. 133, the respondent had

been ordered, in 1888, to pay the sum of $500 as permanent alimony in a divorce action. An execution at that time issued upon the judgment and returned, no property found. In 1898, no other execution having been issued in the meantime, and no motion or pleading being filed, an order was issued that defendant show cause why he had not complied with the order of the court for the payment of the $500. He appeared and promised to pay $100 in three days. He failed to make this payment, and was attached for contempt in not complying with the order of the court. He answered that he was without means and pleaded his exemptions. The court adjudged him guilty of contempt, and ordered him to pay a fine of $200 and costs, and stand committed to jail until the fine and costs were paid. Upon error proceedings, this court, by Norval, J., said: "Section 20 of our Bill of Rights declares: 'No person shall be imprisoned for debt in any civil action on mesne or final process, unless in case of fraud.' Manifestly a decree for permanent alimony is a debt, within the meaning of the above provision of the Constitution. (Const., art. I, sec. 20.)" It was further stated: "The defendant could no more be adjudged guilty of contempt, and fined and imprisoned for failing to pay the $100, than he could be punished as for contempt for a refusal to pay his grocery bill, or to pay an ordinary judgment." *Segear v. Segear,* 23 Neb. 306, and *Nygren v. Nygren,* 42 Neb. 408, are cited to support these views.

*Nygren v. Nygren,* 42 Neb. 408, merely decides that under the amended statute a decree for alimony became a lien upon the real estate of the husband. The question presented now was not involved.

In *Fussell v. State,* 102 Neb. 117, which was a prosecution under chapter 186, Laws 1915 (which provides, in substance, that when a husband, against whom a decree for alimony for the support of his children shall have been rendered, shall, without good cause, refuse to pay the amounts provided, he shall be guilty of a misdemeanor)

it was held that the act was evidently passed by the legislature for the express purpose of giving the district court power to enforce orders and decrees in divorce cases, and that the court would ordinarily have such power by a contempt proceeding; but, this court having held in the *Segear* and *Leeder* cases that a decree for alimony is not so enforceable, the legislature passed the act now under consideration. It was also held that this statute did not provide for imprisonment for debt.

From this review it is evident that the view that orders for the payment of alimony are debts like ordinary judgments rests primarily upon a decision in which no appearance was made by counsel to maintain the other view.

Are these decisions sound? After it had been held in *Swansen v. Swansen*, 12 Neb. 210, that, as the statute then stood, a decree for alimony did not constitute a lien on real estate, the legislature passed the amendatory act of 1883. The first section of this act, as we have seen, provides that judgments and orders in divorce cases, shall be liens upon property as in other actions, and may in the same manner be enforced and collected by execution, or other process as in other judgments. Section 2, which is not mentioned in the *Segear* or *Leeder* opinions, but which is relied upon as justifying the imprisonment of the relator, so far as material here, is as follows: "The remedy given by this act shall be held to be cumulative and in no respect to take away or abridge any subsisting remedy or power of the court for the enforcement of such judgments and orders." Laws, 1883, ch. 40, sec. 2. What remedy or power of the court for the enforcement of judgments and orders then subsisted? In a consideration of the power of divorce courts in this country, Mr. Bishop says: "That, though our ancestors did not bring with them the English ecclesiastical courts, they brought the law which in England those courts administered, so far as applicable to our situation and circumstances. It had no practical force with us while

there was no tribunal to administer it. But on the establishment of a tribunal—as by authorizing a common-law or equity court to grant divorces for adultery or cruelty—such law occupied the same relation to the subject as any other branch of the common law to its subject." 1 Bishop, Marriage, Divorce and Separation, sec. 123. And, also, in section 126: "If we should deny the doctrine of law in abeyance, and even hold that the marriage and divorce law of the English ecclesiastical courts did not become common law in the American colonies on their settlement from England, still, when the statute of a state authorizes divorce for a cause named, it carries with it by interpretation the further provision that it shall be enforced after the English rules and methods, so far as adapted to our circumstances and the common practice of the particular court, and not in conflict with any statutory terms." He illustrates this by the doctrines of connivance, condonation and recrimination, which are not to be found in the statutes, and yet are applicable as defenses in a divorce suit. *Petrie v. People,* 40 Ill. 334; *Barber v. Barber,* 62 U. S. 582. This court has taken the same view. *Cizek v. Cizek,* 69 Neb. 800; *Cizek v. Cizek,* 76 Neb. 797; *Wharton v. Jackson,* 107 Neb. 288.

A few courts refuse to allow the remedy by contempt proceedings for wilful refusal to pay alimony. The reasons given are that, since the legislature has provided a remedy by execution, the ancient power of courts of chancery to enforce their orders by attachment of the person has been abolished; or, that such an order for the payment of alimony is a mere debt, and that imprisonment for debt is abolished by the Constitution. The courts of Missouri assign both reasons. The first reason is assigned in *McMakin v. McMakin,* 68 Mo. App. 57, and *In re Kinsolving,* 135 Mo. App. 631. *Coughlin v. Ehlert,* 39 Mo. 285, giving the second reason, and holding that therefore one refusing to obey an order for the payment of alimony may not be imprisoned, is based

upon *Roberts v. Stoner*, 18 Mo. 481, which was not a divorce and alimony case. In *Aspinwall v. Aspinwall*, 53 N. J. Eq. 684, construing a statute of the state, the first reason is assigned; also in *Gane v. Gane*, 45 N. Y. Super. Ct. 355. The second reason is given in *Marsh v. Marsh*, 162 Ind. 210.

Some courts, while denying the remedy by contempt for refusal to pay permanent alimony, allow it to be used where there had been a wilful and unreasonable refusal to pay temporary alimony. In Michigan it is held that an order for the payment of temporary alimony not being recoverable by execution, an attachment for contempt will lie. It is said: "The statutes have done away with the barbarous rules which made process of contempt the usual remedy for the enforcement of equitable rights." But it is also said: "The nature and purpose of allowances to carry on litigation would not allow them to depend for enforcement upon executions. Unless they can be enforced in some other way, they may be practically defeated." *Haines v. Haines*, 35 Mich. 138. See *North v. North*, 39 Mich. 67; *Carnahan v. Carnahan*, 143 Mich. 390. The same rule is followed in Connecticut, *Lyon v. Lyon*, 21 Conn. 185; and in Iowa in *Bailey v. Bailey*, 69 Ia. 77; *Groves' Appeal*, 68 Pa. St. 143. Other cases hold such remedy may be availed of to enforce payment of either kind of alimony. *Park v. Park*, 80 N. Y. 156; *Murray v. Murray*, 84 Ala. 363; *State v. King*, 49 La. Ann. 1503; *In re Fanning*, 40 Minn. 4; *Dwelly v. Dwelly*, 46 Me. 377; *Pain v. Pain*, 80 N. Car. 322; *Blake v. People*, 80 Ill, 11; *Tolman v. Leonard*, 6 App. D. C. 224; *Morton v. Morton*, 4 Cush. (Mass.) 518; *Slade v. Slade*, 106 Mass. 499; *Bronk v. State*, 43 Fla. 461; *Brinkley v. Brinkley*, 47 N. Y. 40; *Ex parte Davis*, 101 Tex. 607; *Pinckard v. Pinckard*, 23 Ga. 286; *Carlton v. Carlton*, 44 Ga. 216; *Staples v. Staples*, 87 Wis. 592; *Galland v. Galland*, 44 Cal. 475; *Smith v. Smith*, 81 W. Va. 761.

A judgment, order or decree for the payment of tem-

porary alimony possesses different characteristics from an ordinary debt. Before it is made the court has decided that it is the duty of the defendant in the case to support his wife, and that he has the power to do so. It is designed to secure the performance of a legal duty in which the public has an interest. It may be modified or set aside upon a proper showing by the court which rendered it, as circumstances may warrant. *Audubon v. Shufeldt,* 181 U. S. 575; *Petrie v. People,* 40 Ill. 334; *Wightman v. Wightman,* 45 Ill. 167; *Stonehill v. Stonehill,* 146 Ind. 445; *Lyon v. Lyon,* 21 Conn. 185; *State v. Cook,* 66 Ohio St. 566; *Barclay v. Barclay,* 184 Ill. 375.

We conclude, therefore, that the order to relator to pay temporary alimony is not a mere debt, and that the provision of the Constitution that "no person shall be imprisoned for debt in any civil action on mesne or final process, unless in cases of fraud" (Const., art. I, sec. 20), does not apply to the wilful refusal to obey such an order of the court.

As to the other contention: The holding that contempt proceedings may not be availed of because an execution can issue may be correct under the statute of some states, but in this state the act of 1883, by the second section, expressly provides that the remedy by execution and lien provided for by the first section shall be cumulative and shall not take away or abridge any subsisting power of the court for the enforcement of such judgments and orders. We have seen that the remedy by contempt proceedings for the nonpayment of temporary alimony is almost unanimously held to be one of the inherent powers of the court in divorce proceedings.

We are reluctant to interfere with former decisions, but where they have not become a rule of property, and pertain merely to a question of practice, and the court did not have the invaluable aid of counsel to present both sides of the question before the basic decision was made, we should not hesitate to adopt the proper practice and

set aside the erroneous decisions. The rule of *stare decisis* is not so binding in mere matters of practice as in those of substantive law.

Despite the ideas of some would-be social reformers, it is still the legal duty of every husband to support his wife, and until this duty has been removed by the legislature it should be enforced. When a failure to discharge this duty has been made to appear before a court of competent jurisdiction, and an order *pendente lite* has been made that he fulfil this obligation, a wilful, definite and contumacious disobedience of the order by a hale and hearty man, able to earn a living, or with other means, *without just or reasonable cause,* does in fact constitute a contempt of court, and may be punishable as such. To commit to jail is a harsh and drastic remedy. Of course, if the refusal is not wilful, if the defaulting husband has in good faith no means wherewith to pay the alimony, and does not wilfully refuse to obey the order of the court and has just or reasonable cause for his failure to comply, he may purge himself of the contempt by so showing.

We feel justified in taking the position occupied by the majority of courts in this country upon the proposition, in overruling *Segear v. Segear,* and *Leeder v. State, supra,* and in holding that the relator, having been lawfully committed for contempt in wilfully disobeying the order of the court, is not entitled to discharge by a writ of habeas corpus.

AFFIRMED.